**UNITED STATES of America, Appellee,**

v.

**Louis PARISI, Defendant, Appellant,**

**UNITED STATES of America, Appellee,**

v.

**Blaise MARFEO, Defendant, Appellant.**

**Nos. 81–1721, 81–1736.**

United States Court of Appeals,
First Circuit.

Argued March 4, 1981.

Decided March 29, 1982.

Joseph F. Penza, Jr., Providence, R. I., for appellant Blaise Marfeo.

James E. O'Neil, Asst. U. S. Atty., Providence, R. I., with whom Lincoln C. Almond, U. S. Atty., Providence, R. I., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Defendants were convicted of acquiring food stamp coupons at discount prices under circumstances violating 7 U.S.C. § 2024(b)[1].

---

1. "Whoever knowingly uses, transfers, acquires, alters, or possesses coupons ... in any manner not authorized by this chapter or the regulations issued pursuant to this chapter

This appeal raises two claims: that defendants were entrapped as matter of law, and that, if not, there was error in the charge. The record lacks a transcript, and is highly bobtailed. Except that it appears that the purchases were made from government agents, nothing is shown with respect to the circumstances of the transactions, the nature of the inducement, or the defendants' willingness. It is conceded that for the purposes of the motions for acquittal we must take defendants' predisposition as established. FRAP 10(b)(2).

Admitted predisposition means that the case "does not qualify as one involving 'entrapment' at all." *Hampton v. United States*, 1976, 425 U.S. 484, 489, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (Rehnquist, J., joined by Burger, C. J., and White, J.); *see id.* at 492 n.2, 96 S.Ct. at 1651 n.2 (Powell, J., joined by Blackmun, J., concurring in the judgment). The cases upon which defendants rely for a rule of entrapment per se when the government supplies the unlawfully possessed goods, *e.g., United States v. Bueno*, 5 Cir., 1971, 447 F.2d 903, *cert. denied*, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411; *United States v. West*, 3 Cir., 1975, 511 F.2d 1083, were effectively overruled by *Hampton. See United States v. Hill*, 5 Cir., 1980, 626 F.2d 1301, 1307. Nevertheless, according to a differently composed majority of the *Hampton* Court there remains the issue whether the government agents' participation in the offense was so "outrageous," or "offensive," as to require reversal under the due process clause, or by virtue of our supervisory powers. 425 U.S., ante, at 491–95, 96 S.Ct. at 1650–52 (Powell, J., joined by Blackmun, J.); *id.* at 495–500, 96 S.Ct. at 1652–55 (Brennan, J., joined by Stewart and Marshall, JJ.); *see United States v. Caron*, 1 Cir., 1980, 615 F.2d 920, 921; *United States v. Johnson*, 1 Cir., 1977, 565 F.2d 179, 181–82, *cert. denied*, 434 U.S. 1075, 98 S.Ct. 1264, 55 L.Ed.2d 780.

This issue is presented neat—the officers participated to the extent of supplying the food stamps, cumulatively worth some $20,000.[2] We do not find this participation intolerable. In *Hampton* an undercover government agent supplied a predisposed defendant with heroin to sell to another undercover agent. Even the two justices, Justice Powell, joined by Justice Blackmun, who would not subscribe to the plurality opinion's assertion that, given predisposition, there never could be a violation of due process, declined to hold that merely supplying the drug was constitutionally offensive. At the same time, we note that Justice Powell felt, 425 U.S., ante, at 495 n.7, 96 S.Ct. at 1652 n.7, that possibly greater involvement was permissible in drug cases because of the seriousness of the traffic, and the difficulty of apprehending offenders. *See also United States v. Russell*, 1973, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366.

Food stamps are not drugs. However, from the very fact that they are freely possessed and redeemed, and go through many hands, apprehension of parties whose possession or transfer is unlawful only for perhaps non-obvious reasons may be particularly difficult. Under these circumstances the most effective way to catch and deter retailers or others who would deal in bulk in stolen food stamps may be for the government itself to provide the stamps to the willing buyers. A defendant who is predisposed to purchase stamps wholesale is a much more serious criminal than are individual misusers. We see nothing outrageous in the government's conduct.

Defendants' second objection is to the court's charge on entrapment. This accorded with our decision in *Kadis v. United States*, 1 Cir., 1967, 373 F.2d 370, holding that predisposition and inducement were not to be bifurcated, but were to be considered together. The court said, *inter alia*,

"Where a person would not have otherwise violated the law, but is induced or persuaded by law enforcement officers or

shall, if such coupons . . . are of the value of $100 or more, be guilty of a felony . . . ."

**2.** In the absence of a transcript we take this figure from the indictment.

their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

"On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment.

"If you should find beyond a reasonable doubt ... that, *at the time of the commission of the alleged offenses ...* the defendants ... were ready and willing to commit offenses such as are charged in the indictment, when the opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then you should find that the ... defendants were not victims of entrapment." (Emphasis supplied.)

Defendants seize on the court's reference to the "time of the commission" of the offenses, asserting that this could cause the jury to inquire into their mental states after, rather than before, the inducement. Standing alone, the point might be well taken. Obviously, an entrapped defendant will always be willing and ready to commit the offense after the inducement and immediately before the crime's commission. However, in several other places the court made clear the necessity for finding a predisposition to commit the crime apart from any governmental persuasion. We particularly like the court's distinguishing hesitation motivated by a consciousness of the upright from that due to the circumspection of a law violator. There was no error.

*Affirmed.*