UNITED STATES of America, Appellee,

v.

Theodore Roosevelt SMITH, alias Ted, Appellant.

No. 77–1116.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1977.

Decided Nov. 29, 1977.

---

1. 39 U.S.C. § 401(1).

Melvin R. Hughes, Jr., Richmond, Va. (Robert P. Geary, McGrath & Geary, Richmond, Va., on brief), for appellant.

Frederick Eisenbud, Atty., U. S. Dept. of Justice, Washington, D. C. (Michael Farrell, Atty., U. S. Dept. of Justice, Washington, D. C., and Jervis S. Finney, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, BUTZNER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

After a jury trial, Theodore Roosevelt Smith was convicted on one count of conspiring to manufacture, distribute, and possess with intent to manufacture and distribute a controlled substance, in violation of 21 U.S.C. § 846, and on one count of using the telephone to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b). We affirm.

Defendant, along with twenty coconspirators, was indicted on drug-related charges.[1]

---

1. On May 3, 1976, the district court granted appellant's motion for severance, and he was tried separately after the trial of thirteen of his codefendants was complete. In that trial, Jerra McCrea Lyles, Delores Johnson, Clarence Peter Swann, James Iberry Adams, Antoinette Dunn, Russell Cohn, William Cornish, Donald Wilkes, Richard Fulton, and Gloria Mims were convicted on various counts. All but Delores Johnson appealed, and this court affirmed in an unpublished opinion. *United States v. Lyles et al.*, 556 F.2d 575 (4th Cir. 1977).

He was accused of being a major supplier of illegal drugs for Jerra Lyles, who was the source of illegal drugs for many distributors in Baltimore.

The defendant objected to the introduction of an address book which he claimed was acquired by the police as a result of an illegal search. After a suppression hearing, the district court found that the address book was in the defendant's coat when the defendant requested that it be given him, and that a search of the coat before giving it to the defendant was not a violation of his fourth amendment rights.

■ Since we perceive no clear error in the factual determinations of the district court, *United States v. Woodward* 546 F.2d 576 (4th Cir. 1976), we agree that the search of the defendant's coat was proper as a search incident to a custodial arrest and that the address book was properly admitted into evidence. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

■ Defendant next claims that the failure of the investigating authorities, in seeking a wiretap on Lyles' telephone, to actually name defendant in the wiretap application as a person whose conversations potentially would be intercepted violated the provisions of 18 U.S.C. §§ 2518 *et seq.*, relating to wiretap procedures. Defendant bolsters this argument by pointing to the fact that although his name did appear in the affidavit supporting the wiretap on Lyles' telephone, it did not appear as the name of a person whose conversations would potentially be intercepted. Although this is true, it is clear that the occurrence of his name was not related to the conspiracy under investigation at that time, and that the recordings of defendant's conversations were in fact made incident to a lawful wiretap.

Therefore, it was not error to allow the introduction of the taped telephone calls simply because defendant was not named in the application or order as one whose conversations possibly would be intercepted.

*See United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977).

Defendant also asserts that the wiretap application did not contain a full and complete statement as to whether other investigative procedures had been tried and failed, or why they appeared unlikely to succeed if tried in the future. 18 U.S.C. § 2518(1)(c). Our review of the application reveals that it meets the required standards. *See generally United States v. Bobo*, 477 F.2d 974, 983 (4th Cir. 1973).

■ Defendant next contends that the evidence was insufficient to establish that he was a member of the conspiracy and had used a telephone in furtherance thereof. Bearing in mind that this court will affirm the jury determination "if there is substantial evidence, taking the view most favorable to the Government, to support the findings of guilt," *United States v. Walsh*, 544 F.2d 156 (4th Cir. 1976), we hold that the facts of this case are sufficient to sustain the jury verdict.

Chandler Wynn, a coconspirator indicted with defendant and Jerra Lyles, presented four hearsay statements made by coconspirator Lyles to Wynn, which statements incriminated the defendant. Since the fourth statement was made to Wynn after he and Lyles had been arrested, and after the conspiracy had terminated, defendant contends that this was inadmissible hearsay.

■ Assuming that the admission of this statement was error, we hold it to be harmless. The impact of the fourth statement was merely cumulative, and in light of the other overwhelming evidence, we hold its admission, if error, was harmless beyond a reasonable doubt. *See, e. g., Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *United States v. Shaw*, 518 F.2d 1182, 1183 (4th Cir. 1975) *citing, e. g., Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Finally, defendant believes that the Government committed reversible error by questioning witness Leeds about his having

taken a polygraph test. Defense counsel promptly objected to the question, the court sustained an objection, struck the evidence, and gave a curative instruction telling the jury to disregard the improper question and answer. We cannot conclude, on this record, that what the judge did was ineffective or that he should have done more. *See United States v. Swindler*, 416 F.2d 25 (4th Cir. 1969).

We believe that *Kaminski v. State*, 63 So.2d 339 (Fla.1953), cited by the defendant, is distinguishable. There, the Florida court found that the error resulting from a similar question asked a Government witness was not curable by instruction. In *Kaminski*, the witness was a crucial Government witness who had been severely discredited by the defense, and who the Government attempted to rehabilitate by asking the question concerning the polygraph test. Here, witness Leeds was not a crucial witness, and any error was either cured by the court's instruction, or was harmless beyond a reasonable doubt.

*AFFIRMED.*