**UNITED STATES of America, Plaintiff,**

v.

**Nelson CARTAGENA–MERCED (02); Defendant.**

**No. CRIM. 97–110(JAF).**

United States District Court, D. Puerto Rico.

Nov. 19, 1997.

Margaret E. Davis, Special Asst. U.S. Atty., Guilermo Gil, U.S. Atty., U.S. Dept. of Justice, San Juan, PR, for Plaintiff.

Juan R. Acevedo–Cruz, San Juan, PR, for Defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Defendant Nelson Cartagena–Merced is charged with five counts of bank robbery and two counts of narcotics possession with intent to distribute, and brings this motion to sever the joinder of the bank robbery offenses from the narcotics offenses, and the joinder of his trial with that of codefendants charged with the same bank robbery counts.

## I.

### Background

#### A. Facts

On May 13, 1997, three armed gunmen dressed as Loomis Fargo security guards entered the Loomis Fargo truck yard in Ponce, Puerto Rico, and hid in the bathroom of the office trailer. At approximately 7:20 P.M. that evening, the first Loomis Fargo armored vehicle returned from its daily money pick-up. The driver remained in the vehicle while his partner exited the vehicle and entered the office to complete paper work. The gunmen who had been hiding in the bathroom disarmed the driver's partner and forced him into the trailer's bathroom. Presumably to investigate his partner's delay, the driver exited the vehicle and entered the office. The gunmen then disarmed the driver and forced him into the trailer's bathroom. The gunmen repeated this sequence to four other armored vehicles.

Next, the gunmen selected one guard captured in the bathroom to open the doors to the five armored vehicles. They then took the bags of currency with a net value of approximately $5,500,000 from the five vehicles. They also netted a substantial amount of checks.

## B. *Charges*

Defendants José Ramos–Cartagena, a/k/a Hochi; Josué G. Reyes–Hernández, a/k/a Cheito; John Alexis Mojica–Báez, a/k/a Abat; and Nelson Cartagena–Merced, a/k/a Rolo, are charged with forcibly taking money and checks belonging to a bank. 18 U.S.C. §§ 2, 2113(a)(d), 2114(a), 2117, 924(c)(1) ("Counts 1–5").

Defendant Rafael A. Báez–González, a/k/a Papo, is charged with unlawfully assisting another whom he knew to have committed a bank robbery by allegedly keeping stolen money for Abat to prevent Abat's arrest. 18 U.S.C. § 3 ("Count 6").

Defendant Rodolfo E. Landa–Rivera, a/k/a Roberto León–Ramírez, is charged with unlawfully assisting another whom he knew had committed a bank robbery by allegedly keeping the stolen money for Hochi to prevent Hochi's arrest. 18 U.S.C. § 3 ("Count 7").

Defendant Jessica Vega–Coreano is charged with unlawfully comforting Hochi, Cheito, and Abat, whom she knew had committed a bank robbery, to prevent their apprehension by using an alias to obtain lodging on their behalf. 18 U.S.C. § 3 ("Count 8").

Finally, Cartagena–Merced, in addition to Counts 1–5, is charged with unlawful possession with intent to distributed cocaine and heroin. 21 U.S.C. § 841(a)(1) ("Counts 9–10"). Counts 9–10 against Cartagena–Merced are predicated on several packages of cocaine and heroin that were found at his home during the execution of a search warrant on May 22, 1997.

## II.

### *Parties' Positions*

Defendant Cartagena–Merced argues that Counts 1–5 and Counts 9–10 should be severed under Fed.R.Crim.P. 14, in order to avoid prejudicial "spillover" such that would influence the jury to conclude that he was guilty of the first set of counts because of evidence in the second set of counts, and vice-versa.

The government argues that the bank robbery and narcotics, offenses are properly joined because the purpose of the robbery was to fund drug operations. To prove this motive, the government will offer: (1) the testimony of agents of the Federal Bureau of Investigation ("FBI") stating that, based on their experience and training, bank robberies often fund drug operations; (2) evidence of a pattern of similar robberies committed by some of Cartagena–Merced's codefendants; (3) cash and drugs found at Cartagena–Merced's residence; and (4) the statements of the allegedly deceased Edwin M. Soto–Sánchez, a/k/a Wewe, to FBI Agent Raymond López that defendant and others stated that they committed the robbery to fund their drug operations; and (5) codefendant Báez–González' confession implicating Cartagena–Merced.

Defendant Cartagena–Merced additionally argues that his trial should be severed from that of codefendants based on (1) the alleged prejudicial effect of the Fed.R.Evid. 404(b) evidence to be admitted against codefendants; (2) the allegedly minimal evidence against him for Counts 1–5; and (3) the alleged violation of the Sixth Amendment Confrontation Clause by the admission of codefendant Báez–González's confession. In the alternative, Defendant Cartagena–Merced argues that Báez–González' confession should be redacted to eliminate all references to him.

## III.

### *Legal Standards*

#### A. *Joinder of Offenses*

Fed.R.Crim.P. 8(a) sets forth the standard for joinder of offenses. Rule 8(a) specifically provides:

> Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each · offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Separate offenses may be charged together if there is " 'substantial identity of facts or participants' underlying the charged offenses." *United States v. Yefsky,* 994 F.2d 885, 895 (1st Cir.1993) (quoting *United States v. Levine,* 546 F.2d 658, 662 (5th Cir.1977)). The acts and transactions of one offense should be relevant to the other offense. *United States v. Sutherland,* 929 F.2d 765, 778 (1st Cir.), *cert. denied,* 502 U.S. 822, 112 S.Ct. 83, 116 L.Ed.2d 56 (1991). In determining whether offenses should be joined for trial, the First Circuit historically has "considered whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *See, e.g., United States v. Taylor,* 54 F.3d 967, 973 (1st Cir.1995); *United States v. Chambers,* 964 F.2d 1250, 1251 (1st Cir.1992); *United States v. Gray,* 958 F.2d 9, 14 (1st Cir.1992). An overlap in evidence for each of the offenses is also elemental in determining whether the counts should be severed. *See, e.g., United States v. Stackpole,* 811 F.2d 689, 694 (1st Cir.1987); *Jervis v. Hall,* 622 F.2d 19, 20–21 (1st Cir. 1980).

## B. *Joinder Of Defendants*

■ Various defendants may be jointly indicted if they have participated in the same transaction or series of events constituting an offense. Fed.R.Crim.P. 8(b). Rule 8(b) provides the standard for joinder of defendants:

> Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

The federal system prefers joint trials of defendants who are indicted together in order to promote efficiency and " 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts,' " *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh,* 481 U.S. 200, 210,

107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987)), and by allowing a more accurate statement of relative culpability. *Richardson,* 481 U.S. at 210, 107 S.Ct. at 1708–09.

Severing trials because of the potential risks of prejudice to defendants from a codefendant's confession runs the risk of stunting the efficiency and fairness of the criminal justice system. *Richardson,* 481 U.S. at 209–10, 107 S.Ct. at 1708–09. In a trial with several defendants, a confession by one defendant is particularly commonplace, "since each has reduced assurance that he will be protected by his own silence." *Id.* Forcing prosecutors to bring separate proceedings in such situations and present the same evidence again and again, and requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying is exceptionally burdensome. *Id.* This will furthermore randomly favor the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. *Id.*

■ Rule 8(b) is a compromise between "each defendant's right to have his own guilt considered separately, and the practical benefit to the government and the court of a consolidated proceeding. The defendant's right prevails unless there are presumptive benefits to the government from 'joint proof of facts relevant to all the acts or transactions.' " *United States v. Martinez,* 479 F.2d 824, 827–28 (1st Cir.1973). Overlapping evidence between defendants' offenses will weigh the balance in favor of a joint trial. *United States v. Sutherland,* 929 F.2d 765, 778 (1st Cir.1991) (holding that drug offenses and tax-evasion offenses were properly joined for trial because the likely source of income for which defendant had evaded taxes was drug distribution).

The First Circuit has an articulated approach to be applied in determining what constitutes a single "series of acts or transactions." *See, e.g., United States v. Talavera,* 668 F.2d 625, 629 (1st Cir.1982), *cert. denied,* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982); *United States v. Luna,* 585 F.2d 1 (1st Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978); *United States v. Martinez,* 479 F.2d 824 (1st Cir.1973); *King*

v. *United States,* 355 F.2d 700 (1st Cir.1966). "That determination involves a balancing of the benefit to the government of trying together multiple defendants involved in related incidents against each defendant's right to have his own guilt considered separately." *Talavera,* 668 F.2d at 629.

### C. *Severance Pursuant to Fed.R.Crim.P. 14*

 Even if joinder were proper under Rule 8(a) or (b), if it would prejudice a defendant, a severance pursuant to Fed. R.Crim.P. 14 may nevertheless be appropriate. *Yefsky,* 994 F.2d at 895. Rule 14 provides in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed.R.Crim.P. 14. The sound discretion of the district court governs the decision of whether to grant a severance. *Zafiro v. United States,* 506 U.S. 534, 538–39, 113 S.Ct. 933, 937–38, 122 L.Ed.2d 317 (1993).

 It is the defendant's burden to articulate a specific factual scenario in which the joinder of offenses genuinely prejudices him. *Yefsky,* 994 F.2d at 896 (citing *United States v. Tracy,* 989 F.2d 1279, 1284 (1st Cir.1993), *cert. denied,* 508 U.S. 929 (1993)). There are generally three types of prejudice that may emerge from joining offenses pursuant to Rule 8(a):

> (1) the defendant may become embarrassed, or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*United States v. Scivola,* 766 F.2d 37, 41–42 (1st Cir.1985).

 Once defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that "a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). "[P]rejudice means more than just a better chance of acquittal at a separate trial." *United States v. Martinez,* 479 F.2d at 828. For example, a risk of prejudice from a joinder of defendants "might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro,* 506 U.S. at 539, 113 S.Ct. at 938.

Mere speculation that prejudice exists is insufficient. *Yefsky,* 994 F.2d at 896 (citing *United States v. Porter,* 764 F.2d 1, 13 (1st Cir.1985), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987)). "There is always some prejudice in any trial where more than one offense or offender are tried together—but such 'garden variety' prejudice, in and of itself, will not suffice." *United States v. Boylan,* 898 F.2d 230, 249 (1st Cir.), *cert. denied,* 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990) (citing *United States v. Cresta,* 825 F.2d 538, 554–55 (1st Cir.1987), *cert. denied,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988)).

### IV.

#### *Analysis*

### A. *Joinder*

#### 1. *Joinder of Offenses*

Defendant Cartagena–Merced asserts that the narcotics offense will improperly lead the jury to believe that he was involved in the bank robbery. This causal connection requires far more evidence. *United States v. Taylor,* 54 F.3d 967, 974 (1st Cir.1995). "The government is entitled to charge and join parties on the basis of what it reasonably anticipates proving against all." *United States v. Martinez,* 479 F.2d 824, 828 (1st Cir.1973). "This type of spillover is standard

fare whenever counts involving discrete incidents are linked in a single indictment." *Id.*

■ The key element in joining the robbery and drug offenses in one trial is relevance. The drug offense is not joined with the bank robbery to show criminal propensity, but rather is relevant because the drug offense demonstrates a financial need. *United States v. Madden,* 38 F.3d 747, 752 (4th Cir.1994), *cert. denied,* — U.S. —, 117 S.Ct. 245, 136 L.Ed.2d 173 (1996) ("a demonstration by the government both that the accused has a significant drug habit or addiction and that he did not have the financial means to support it . . . makes such evidence of drug use relevant to establish motive [for robbery]. . . . It is the financial need, not the particular act giving rise to the need, that establishes the relevancy to motive in a financial crimes' prosecution"). Had the narcotics offense and the bank robbery offense been severed, the narcotics offense would still be admissible in the bank robbery trial pursuant to Fed.R.Evid. 404(b)˙as evidence of motive. *See Jervis v. Hall,* 622 F.2d 19, 21 (1st Cir.1980). A separate trial, therefore, would not have availed Cartagena–Merced as the drug offenses would have been admissible in a bank robbery trial anyway. Moreover, the offenses should be joined even if evidence of the bank robbery would have been irrelevant and therefore inadmissible in a trial for narcotics possession with intent to sell as "[j]oinder of counts is often maintained even where evidence of one crime would not be admissible as substantive proof of the other." *United States v. Mackey,* 117 F.3d 24, 26 (1st Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 431, 139 L.Ed.2d 331 (1997); *Jervis v. Hall,* 622 F.2d 19, 21 (1st Cir.1980).

### 2. *Joinder of Defendants*

■ We do not find the possible collateral prejudice Defendant Cartagena–Merced may suffer by the Fed.R.Evid. 404(b) evidence sufficient to outweigh the government's legitimate purpose in proving the motive of the bank robbery. *See Jervis v. Hall,* 622 F.2d at 22 (citing *Spencer v. Texas,* 385 U.S. 554, 564, 87 S.Ct. 648, 653–54, 17 L.Ed.2d 606 (1967)); *see also, United States v. Martinez,* 479 F.2d at 828. Similarly, the

relatively less weighty evidence against Cartagena–Merced as compared to the evidence against the codefendants does not require that the trial be severed. *United States v. Rawwad,* 807 F.2d 294, 295 (1st Cir.1986), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987). "The fact that the defendant plays a minor role and that a substantial portion of the evidence is not directly related to the defendant, does not make it 'automatically unlawful to try him with more important figures.' " *United States v. Cresta,* 825 F.2d 538, 554 (1st Cir.1987) (quoting *Rawwad,* 807 F.2d at 295).

### 3. *Limiting Instructions*

■ Considering the interests of judicial economy and the effects of limiting instructions, this court is not persuaded that the potential prejudice to Cartagena–Merced by joinder of either the offenses or defendants is sufficient to warrant a severance pursuant to Rule 14. We find that instructions from the court which limit the jury to only proper use of the evidence will suffice to minimize any risk of prejudice. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). We can safely presume that the jury will follow such instructions. *Id.; Francis v. Franklin,* 471 U.S. 307, 324–25 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985); *United States v. Smolar,* 557 F.2d 13, 20 (1st Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977). "[T]he rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." *Richardson v. Marsh,* 481 U.S. at 211, 107 S.Ct. at 1709. Limiting instructions will, therefore, sufficiently minimize any potential prejudice to Cartagena–Merced.

To say that joinder of offenses or defendants

> [m]ay be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary

law, and would threaten other large areas of trial jurisprudence. For example, all joint trials, whether of several codefendants or of one defendant charged with multiple offenses, furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge. This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest.

*Spencer v. Texas*, 385 U.S. at 562, 87 S.Ct. at 653 (citations omitted). The court will protect Cartagena–Merced by instructing the jury "to separate the evidence and apply it only to the defendant against whom it was offered." *United States v. Mitchell*, 31 F.3d 271 (5th Cir.), *cert. denied*, 513 U.S. 977, 115 S.Ct. 455, 130 L.Ed.2d 363 (1994); *see also United States v. Luna*, 585 F.2d at 5. Some possible risk of prejudice, even after the limiting instructions, is not sufficient to persuade this court to sever the trial, since that risk almost always exists when multiple defendants with different roles are tried together. *United States v. Palow*, 777 F.2d 52, 56 (1st Cir.1985), *cert. denied*, 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986)(citing *United States v. Greenleaf*, 692 F.2d 182, 187 (1st Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 1523, 75 L.Ed.2d 946 (1983)).

### B. *Báez–González' Confession and the Confrontation Clause*

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." This guarantee includes the right to cross-examine witnesses. *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Ordinarily, a witness at a joint trial is not considered to be a witness "against" a defendant if the court instructs the jury to consider that testimony only against a codefendant. *Richardson v. Marsh*, 481 U.S. 200, 204, 107 S.Ct. 1702, 1705–06, 95 L.Ed.2d 176 (1987). Thus, jury instructions will generally suffice to exclude improper testimony. *Cruz v. New York*, 481 U.S. 186, 191, 107 S.Ct. 1714, 1718, 95 L.Ed.2d 162 (1987). However, limiting instructions will not validate, under the Confrontation Clause, introduction of a nontestifying codefendant's confession which expressly implicates the defendant. *Cruz*, 481 U.S. at 190, 107 S.Ct. at 1717–18 (citing *Bruton v. United States*, 391 U.S. 123, 135–36, 88 S.Ct. 1620, 1627–28, 20 L.Ed.2d 476 (1968)). Such a context presents a "risk that the jury will not, or cannot, follow instructions [which] is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135–36, 88 S.Ct. at 1627–28 (citations omitted).

Nevertheless, "[i]f limited to facially incriminating confessions, *Bruton* can be complied with by a redaction." *Richardson*, 481 U.S. at 209, 107 S.Ct. at 1708 (citing *Bruton*, 391 U.S. at 134 n. 10, 88 S.Ct. at 1626–27 n. 10).[1] Tailoring evidence in lieu of severance to avoid a *Bruton* problem is permissible. *See United States v. Cleveland*, 590 F.2d 24, 28–29 (1st Cir.1978). Importantly, the names must not be merely deleted, but the government must be careful to eliminate any references that leave no doubt to whom the confession is referring. *Cleveland*, 590 F.2d at 28 n. 4 (citations omitted).

Codefendant Báez–González' confession directly implicates Defendant Cartagena–Merced. *See Docket Document Number*

---

1. In contrast to the *Bruton* scenario where the codefendant's confession expressly implicated the defendant as his accomplice, *Bruton*, 391 U.S. at 124 n. 1, 88 S.Ct. at 1621–22 n. 1, *Richardson* held that if the confession is not incriminating on its face but will become so only when linked with evidence introduced later at trial, proper limiting instructions will suffice to allay any Confrontation Clause concerns when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. *Richardson v. Marsh*, 481 U.S. at 208, 107 S.Ct. at 1707–08.

*85, Exh. 1.* Limiting instructions alone subsequently will not suffice to alleviate the Confrontation Clause concerns. *See generally, Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We, therefore, find that a redaction that eliminates not only Defendant Cartagena–Merced's name, but any reference to his existence, along with proper limiting instructions, would be sufficient to render Báez–González' testimony not to be "against" Cartagena–Merced for purposes of triggering the Sixth Amendment Confrontation Clause. *See Cruz v. New York,* 481 U.S. at 189–90, 107 S.Ct. at 1717–18 ("[o]rdinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt"). Tailoring the confession and accompanying it with instructions that the confession may not be used against Cartagena–Merced will, therefore, resolve the *Bruton* and Confrontation Clause problems.

### V.

### *Conclusion*

We, accordingly, **DENY** Defendant's motion for severance of the bank robbery and narcotics offense, and for severance from joint trial with the codefendants.

**IT IS SO ORDERED.**